at Owl. Arguments not to exceed 15 minutes per side. Mr. Crook for the appellant. Judge White, Judge Moore, Judge Donnell, Attorney J.F. Crook. File bar number 0078499 on behalf of Plaintiff and Appellant Ramzi Halasah.   At this time I'd like to reserve five minutes for rebuttal. Thank you, Your Honor. Your Honor, the question is why are we here? The facts of this case are fairly simple. A father gets a call at 1.30 in the middle of the night telling him his son has been charged with criminal activity and needs to come collect his son. He gets out of bed, he drives 20 minutes to the site where his son is located and speaks first to his son who indicates that we're being charged for being at a drinking party. I wasn't drinking. Based on this information, Mr. Halasah then proceeds to talk first to Officer Volk to ask him questions and begin to advocate for his son's innocence. He asks that a breathalyzer test be given to his son and asks what proof do they have that his son has been drinking and why are the police involved? What is the probable cause? He's told by Officer Volk that Officer Fisher is the one who's the investigating officer and Officer Fisher is the one who has the information. Mr. Halasah then turns his attention to Officer Fisher. What is clear from the record, both from the all the way back to the criminal trial in this case, throughout the depositions, is that Officer Fisher made the affirmative decision to break up what he's doing and engage Mr. Halasah in a conversation. During that conversation, Mr. Halasah again advocates for his son's innocence, requesting a breathalyzer be given to his son and wanting to know what the probable cause for the police are to be there. At a certain point, Officer Fisher decides that he's had enough and instructs Mr. Halasah, I'm not going to answer any more of your questions. I'm not going to deal with you. Sign the paperwork for your son and that's how it's going to be. Mr. Halasah then follows the instruction, signs the paperwork for the release of his son. Upon completing that paperwork, he's told that he is free to go. He says, I want to stay here until my son's friend Nick, who had a previous outburst earlier when he was having a conversation with Officer Fisher, and is now locked up, cuffed, and in the back of a police car. I want to make sure he's okay. Mr. Halasah is told, he's not your concern. He's not your child. His parent is here. Leave or you will be arrested. Mr. Halasah requests a flashlight be shined down the driveway. They say no. Mr. Halasah leaves. Now, when you say that Mr. Halasah basically complied with instructions, Mr. Halasah did not move a distance away from the officers and the police. He was, according to the record, sort of in the mix of all of this with his conversations and his actions, correct? That's correct, Your Honor. My client, upon arriving at the scene, he first talked to his son and then he talked first to Officer Volk and then to Officer Fisher, who were located approximately 14 feet apart per the record. After he's gotten the information with his son reconciled and when he's now proceeding to advocate on behalf of the son's friend. Your Honor, I would put before the court that the record, a minimum on a summary judgment standard, does not show a long period of time, nor does the police report indicate anything other than a direct exchange. He says in a hearing of Officer Volk, I'm not going to leave until I make sure Nick's okay. Officer Fisher responds, he's not your responsibility. His mom's here. Leave or you'll be arrested. It's a five, ten second exchange. You said you wanted to talk about why we're here today. And I know you're giving us a recitation of the facts and the record contains a recitation. So, why are we here? Are you contending that your client was falsely arrested, that there was no probable cause for his arrest? What exactly is the issue that you want to focus on today? Well, I'd like to focus on three issues today, Your Honor, and thank you for the question. The first issue is that the law of the case doctrine has not been abided by. Based on the discovery that happened after the first time we were here on 11-3699 in the issuance of a per curiam opinion, the ruling was clear. Defendant Fisher may not rely on the warrant as a defense. So, that issue was off the table. Nothing substantial has changed in the form of the discovery to change the fact that there's still an issue of material fact as to whether or not Mr. Halassa was told to leave multiple times and refused to do so. There's still an issue of material fact as to the removal of the language from the complaint that he filed. And that is actually incredibly important, Your Honor. There are several issues that are implicated directly by the way the complaint was drafted and the nature of the omissions. I put before this Court that if you actually look at the omissions and what was actually taken out of that complaint, Your Honor, without the language that Officer Fisher affirmatively chose to remove, it doesn't describe any criminal activity. It's speech-based. It's truthful based on Mr. Halassa's knowledge that his son was not drinking, and he was advocating his son being given a breathalyzer test to prove that he was not drinking. It's speech-based only. The record is clear. No fighting words. No threats. No antagonistic behavior. It was during a, not a police investigation, but during an administrative process. He was advocating for his son's innocence. Speech-based only. Well, what about the allegations that he was loud and I'm not sure the language they used, but that basically he was agitating at the scene? I put forth a couple things before the Court, Your Honor. My client was advocating for a position that was being rejected by the police officer. It's clear from the record that both parties were speaking loudly and that Officer Fisher was speaking loudly before my client even arrived. I don't think there's any question with regard to that. Where are you getting that from, that he was speaking loudly before he arrived? Mr. Halassa, in his deposition, actually identified that when he arrived, Officer Fisher was there and he heard him, and Officer Fisher was speaking loudly. Well, he was speaking loudly when he arrived, you're saying? Correct. And using a loud tone of voice in general. But with regards to speaking loudly, again, Your Honor, volume alone is not sufficient to turn protected speech into unprotected speech. With regards to the... and if I may drive the Court back to the actual... Are you saying that if somebody comes upon a scene where police are trying to process a group of people and start screaming loudly and people are becoming agitated, that the police cannot take any action towards that person? I would say, Your Honor, that I believe, one, what you've described is actually different. But you said something else. You made the assertion that speaking loudly is protected speech and that can't be a basis of arresting someone. Actually, Your Honor, I do believe that the First Amendment does cover volume of speech. Now, with regard to... Well, there's a time and place issue to the First Amendment as well, Your Honor. And I do believe that time and place comes into this. A contentious scene where the police are trying to maintain order with a bunch of teenagers that the police believe are drunk. And you're saying that that time and place is one that does not limit someone else coming and starting to scream at the police. Hypothetically, knowing that you don't think your client did that. Your Honor, as far as screaming at the police, I think it's the content as much as the volume. It could be screaming, I can't believe you're doing this, or don't arrest my son. All the time, people get taken out of houses and the police are trying to get them. It could be an active arrest and people are screaming. If we criminalize everyone who objects, regardless of their volume, to the conduct of police, we're going to have a whole lot of criminal cases in a whole lot of areas. But if that yelling and screaming is with the intent and for the purpose of interfering with the police officers' discharge of their duties, I mean, it's more than somebody standing remotely from this screaming and yelling, but somebody who's actually, as I used the term earlier, in the mix and trying to prevent the officers from doing their duty, isn't that a limitation where the First Amendment has to sort of yield to the public safety and the police operational protocol? I understand your question, Your Honor. I do believe Ohio law, specifically State v. Cooper, 51 Ohio Appeal 3rd 790, and many of its progeny, deal with that. The Ohio disorderly conduct statutes and the cases that evaluate them, which I've included in my brief and I won't bother to recite chapter and verse, but they do make, one, a very clear point that the inconvenience, distress, disturbance, or alarm cannot be to the police officer. It has to be to a third party who's a member of the public. Number one. Number two, there's a heightened standard of uncooperative behavior with regards to, and this is State v. Cooper, when you're talking about uncooperative behavior when dealing with a police officer, it's a heightened standard before it becomes criminal when it's truthful, speech-based only. And there's nothing in the record to imply that what Mr. Halassa was doing was anything more than expressing an opinion, stating a fact as he understood it, and asking for the police to take appropriate action to verify that fact. His son was being charged criminally. That being said... I know your yellow light is on. If I could take you back to your contention about the complaint being drafted improperly because of these omissions. The omissions were omissions of law in the police officer's statement of what this particular crime consisted of, right? Thank you, Your Honor. Am I right about that? Actually, no, Your Honor. That's been, I believe, a common misconception. It was omissions of law and fact. The law portion is clearly omitted. However, there was nothing in any of the recitation where the officer put his description of the events that could be said to describe the conduct that was illegal. It didn't exist. There was nothing in the police report that implies that Mr. Halassa in any way impeded the movement of others. There's no one, in fact... But if that's the case, that's the judge's fault. I mean, if somebody goes in with a truthful warrant, I mean, a truthful complaint, asking for an arrest warrant that's totally unsubstantiated, that's the judge's fault. That's not actionable. Actually, Your Honor, if the warrant contains not only omissions of law and fact, but for the omissions under the psych standard, but on top of that, there's the issue of this repeatedly told to leave, repeatedly refused to do so, and the failure to disclose that Mr. Halassa did nothing more than plead his son's case. It was totally speech-based. I realize that we have this problem. I understand that there's the law of the case problem, but if you look at the complaint, I don't think you're disagreeing with anything except for the one statement that after being ordered to leave several times he ultimately left. Everything else seems to be saying the same thing that you're saying. You're correct, Your Honor. My position is that what is described in that complaint not only does not match the statute or any other part of the disorderly conduct statute... I want to stop you right there. That is not actionable. Do you agree or not? When the decision is made when you have three weeks to prepare a complaint to specifically omit all of the... You didn't say that. I'm sorry. I want to make sure we understand each other. You just made a statement that the complaint doesn't describe anything that is a violation of the disorderly statute. Right? And I'm asking you I do not understand that that is actionable. I'm asking you is that actionable? If it was done based on reckless disregard for the truth and or deliberately, Your Honor. Okay, excuse me. Let's assume that everything in here is truthful. Okay? Yes, Your Honor. But it doesn't make out the truth. I do not understand that to be actionable. Are you saying that that is actionable? You submit an entirely truthful complaint to a judge asking for an arrest warrant for a crime that is not made out by your truthful statement. Is that actionable? When the truthful... You said an entirely truthful statement, Your Honor, and I don't mean to quibble, but I do not mean to quibble. If it's entirely truthful without omissions and is a complete recitation, no, that would not be actionable, Your Honor. Okay, so now we get to the point where you're saying that there are omissions. What was omitted? Your Honor, the fact that it was speech-based conduct only... Well, that's apparent on the face. That's a legal conclusion. Your Honor, there was no restriction of movement. There's no way that the restriction of movement... But he didn't say there was a restriction of movement. The police officer didn't say that in the complaint, right? I understand that, Your Honor. He was being truthful. He wasn't omitting anything. He didn't say something that didn't happen. Well, actually, Your Honor, we've argued the whole time that there's also the issue on the... And as you pointed out earlier, Judge White, the issue of repeatedly told to leave and repeatedly refused to do so. We've had issue with that. We believe that is a genuine issue, a material fact, and has been from the start of this case. And that would be a false statement. Is there anything else? That's based on that being in here, that you're saying was untruthful. Correct, Your Honor. Okay. Counsel, I know your red light is on, but I want to just go back again and look at this whole series of events. The officer wrote out his police report or whatever, submitted this to the prosecutor, correct? Correct, Your Honor. And recommended that action be taken against your client for interfering with the police and the performance of their duties, correct? That's correct, Your Honor. He actually recommended a structured official business. And the... Upon submitting that information to the prosecutor, the one trained in the law, the prosecutor assessed this and made a determination to draft a complaint charging disorderly conduct, correct? That is correct, Your Honor. And that disorderly conduct was taken to a neutral and detached magistrate who presumably looked at that and then issued a warrant, correct? That is correct, Your Honor. And with that chain of events, why is it that you say Mr. Fisher is liable? There's a couple reasons, Your Honor. I've contended throughout and, in fact, argued the last time we were here at 11-3699 where they ruled on the briefs. The issue of whether Mr. Hlasa was repeatedly told to leave, I believe, is not only... At the time, it was and is not supported by the police report. During the depositions in this case, after we came back down on remand, Officer Fisher was asked to go line by line to identify any place other than the conclusory statement where Mr. Hlasa was told to leave. He could not identify one. He did, however, equate being told you're free to leave to being told to leave as an affirmative directive. I believe that's colored. This is also the same officer who, in his deposition, admitted that someone asking him a question when he's talking to another person, it could be considered criminal. But as far as why it's criminal, had the response come back from the prosecutor that, no, I'm going to be charging disorderly conduct, and the prosecutor had written out the issue, I think there would be much more protection for Officer Fisher. That being said, Officer Fisher was the one who had three weeks, and the district court actually does a very nice job of laying out this timeline. It was June 9th when they received back the instruction, the facts, that it should be persistent disorderly conduct. July 2nd was the date that the warrant was actually submitted and the complaint was actually submitted. So we're talking about a period of three weeks for an officer with 12 years of experience to undertake the incredibly simple act of Officer Fisher, the facts in the actual police report could not support a charge under any of the summary judgment standards absent the decision, and it wasn't a Scribner's error like the district court said, to surgically remove a large section that defined the criminality, to insert a false statement of fact, and to remove or omit several critical areas, Your Honor. There's also a case law out there that states that when a complaint has been submitted and a warrant has been issued, based on, again, the material omissions of permissions, that if the information is bad to the prosecutor to begin with, that does not provide a shield to liability. Again, the false statement of fact is that he was told to leave several times, multiple times. Correct. Thank you for your argument. Thank you, Your Honor. Okay, I'll ask. Thank you. May it please the court, my name is Frank Scaldone and I represent the officer James Fisher. I think, perhaps, where I'd like to begin is the issue of where the Sixth Circuit has held the knowledge of the precise crime committed is not necessary to find the probable cause. And I think in the Sixth Circuit's remand order, they kind of pointed the parties in the direction of exploring that defense. It seems to me that there's a difference between an officer being out on the scene and deciding to arrest for one offense, putting a label on it, and there really isn't probable cause for that offense, but there's a probable cause for another offense. And I think it's quite clear the cases say that's okay. It's entirely different, but that's not what happened. He didn't arrest him out there. He went back. There was a warrant. And I think that the cases, well, I was concerned that it's a different circumstance where you're no longer arresting for the wrong offense out on the scene. You're arresting for a particular offense as to which you obtained a warrant. And I don't think that there are cases that say that you can then substitute a new offense. One case I have here is an unpublished case, number 10-1082 in 419 Fed Appendix 589. And it happens to deal with that situation and it rejects the notion that you can substitute a new offense for a warrant as opposed to out in the field. So I'm not sure how that plays out here. Well, I think at the end, I'm not familiar with that case. I think at the very base level, it goes into perhaps the qualified immunity analysis and the overall reasonableness of the officer's conduct. In this case, when the officer drafted the police report, his call was, his recommendation was on the obstruction of official business. Right, but okay, unless the assertion that he was asked to leave multiple times and refused is irrelevant to the offense of obstruction. I mean, it would seem, you still have the problem that the prior panel found that the assertion that he was asked to leave multiple times and refused is potentially actionable as a false statement. And how does that disappear on remand? I think it disappears on remand by the differing status of, I mean, essentially when the case came before the court before, it was really, there was no depositions taken. It was done on a very limited record. So when it was sent back down, the main depositions of the main parties in this was taken. So I think that takes it into the exception. So it would seem to me then that if you establish on remand that he was in fact asked multiple times to leave and didn't, maybe you have a different case. But where was that established on remand? I think, I mean, I guess I disagree with the interpretation of opposing counsel. I think that the report itself does establish that he had been asked more than once to leave the premises. Then your quarrel, then you should have asked for rehearing, right? I don't think that would be necessary in this circumstance based on the fact that it is being sent back below for additional, it's not as if there was a legal determination or a limiting order by the Sixth Circuit. It seemed to be more of a general remand. The report that you're referring to is a report that the Sixth Circuit panel had before it the first time around, right? Correct. So how can you say in response to Judge White's question that we're not bound by law of the case when we're looking at the very same document that the prior panel had in front of it? My position would be that it is a general remand and that the court can review, can re-review the factual record if it's reasoned that an additional review of the report would not be available to this court or otherwise handcuff this court into being... To come to a completely different conclusion based on the same document without having any discovery that shed a new light on it. I think that's correct. I think that's correct. Okay, where in the report does it say how many additional times to leave? Well, there's toward the end of the report, and I don't have that right before me, there is the suggestion that he has been asked before and that he finally does cooperate. Well, that was the... Can you tell us where in the report that is? Uh... It's obscured a little bit, but page 5 of the report says that being ordered to leave several times, he ultimately left. But that's the very phrase that the court found objectionable. You're asking me where it was in the record. I know, but the court said that wasn't supported. That that's a conclusion that wasn't supported by what happened out there. Where in the account does it say that he was asked multiple times to leave? The record has it in that part. I mean, I'd have to go back... Okay, let me ask you this. Where does Fisher say under oath that he asked him multiple times to leave? ... ... ... ... There's another part, and I can supplement by filing a notice, but I do notice at Halas' deposition at page 42 and 43, the question is, do you agree with me on several instances you told police that you were not ready to leave the scene? Several, meaning how many more than once? That's completely different from refusing to leave after being asked. What are you relying on to support that he was asked to leave several times and refused? Again, I'll have to look back at the record to give you an absolute slide. I believe that it's part of his deposition. Whose deposition? Fisher's? Officer Fisher's. But I'll have to provide a notice of authority, supplement if you'd like a specific. Okay. Well, I mean, it seems to me it's crucial to your case. It's unusual that you wouldn't know, but... Well, I think in this circumstance, the is an overarching umbrella that you have an officer who has taken reasonable steps to, you know, he's certainly not violating bright-line rules or the types of things that would strip somebody of qualified immunity and make them personally liable. There's no evidence here that Officer Fisher had any bad blood between him and Mr. Halas, so there was no reason for him. And if he really, the charge that he selected, well, in any event, I mean, the police report was sent to the prosecutor. The prosecutor made the decision on what charge to bring. The officer provided the report and the recommendation to the magistrate under oath. Wait, what did he say? The report and the recommendation. What... I'm sorry. The report went to the prosecutor? I mean, went to the magistrate with... His case file. So the magistrate gets this report, not just that other write-up that omits the language. The magistrate also got the report that we're talking about? Okay. And just out of... It's also unclear to me, is there evidence that the prosecutor went with him to the magistrate? I'm not sure about... I'm not sure I'm absolutely positive the answer to that question. You're not claiming that? I'm not claiming that today, no. I thought somebody was claiming that the prosecutor, Germano, went... That may have been the case. I just don't have 100% recollection. I don't want to state something in court that may not be absolutely correct. And how did Fisher come to... Did he testify as to why he omitted that language? As the district court pointed out, there was never any questioning to him on that issue. There certainly was no establishing the high level of culpability that he's deliberately or recklessly omitting that information. It simply wasn't examined at the trial court level. So that part of the record, and that would be the burden of the plaintiff to demonstrate that just didn't occur. And I think that's part of the district court's rationale as well. There was no evidence... If somebody submits a request for a warrant and leaves out the part of the statute that would make all the bells and whistles and the red flag come up, like, whoa, this doesn't sound like that offense, and just conveniently leaves it out, you don't think that that raises a question? I don't believe so. Because there's no demonstration that it wasn't left out inadvertently, that there was nothing. And that was, again, the district court's position. But there's nothing... Officer Fisher brought forth the police report, provided all of the information, made it available to the magistrate. And there's no demonstration that, again, there's no reason to want to pursue this particular charge over... His initial evaluation was obstruction of business. And I think if the prosecutor went with that, there may have been a conviction on that. So, under Ohio law, again, and the Ohio procedure, I just want to make clear, the police officer on the scene, out in the field, takes factual statements from witnesses and makes a determination what he or she thinks an appropriate charge is. Under Ohio law, can they just go directly to the magistrate judge, or must that go first to a prosecutor, for the prosecutor to review it and evaluate it and make a recommendation as to some charge? I can speak to the practice in this situation. It is the prosecutor who makes the decision of what charge to actually pursue. Given the clear statement in the prior appeal that Fisher can't rely on his warrant application alone to survive summary judgment, how is the disorderly conduct of false arrest issue not controlling? Why is it not law of the case, notwithstanding what I just asked? I think I answered a little bit of that. I explained my position to Judge White, but also I think it can be viewed in terms of the qualified immunity analysis as well. And that is another defense that was not determined in the previous opinion. I think this should apply the qualified immunity doctrine in this iteration of this appeal. That's not to say that I don't believe that establishing the new facts and being sent back down doesn't constitute an exception to the law of the case. I firmly believe this was. The court looked at this case as there was no discovery that had even been taken. One other quick question. Do you agree with your opposing counsel that this whole thing turns on the truth or falsity of the statement that he was asked to leave several times and didn't leave? I don't think so. I think it has a little bit to do there. But one of the things that he brings up is that he's just merely stating his opinions or his advocacy. But Mr. Huassa was doing a whole lot more than that. And I think the record is clear on that. That he's interrupting. That he's delaying the ability to process this situation. That he is speaking loudly. That he is being confrontational. That he is being...that he's not...it's not merely asking questions. It's not merely questioning the probable cause. But there's an overall pattern of behavior here that he's not cooperative. He's not providing his ID. He's refusing to provide his ID. He's refusing to provide the forms. He's refusing to leave even after he's signed his forms for his child. But is demanding that he stays there until another child is left. Even though that child's parent was already there. And I mean it's more... I guess I make that point because it's certainly...the record clearly shows it's more than just having some questions for the officers. Did you clarify for me what documents were presented to the state magistrate in obtaining the arrest warrant? I believe that was the... you know in the deposition I'm reading it was the report itself and the recommendation of the prosecutor. I don't know... Was there a written recommendation of the prosecutor? I wish I knew the answer to that. I don't know. In the deposition testimony I recall distinctly though the recommendation of the prosecutor. So I guess based on that either there is a document or two he was actually there. But you don't know which it is. And when I'm looking at the complaint that was filed in the U.S. District Court it says that attached is exhibit one complaint and summons. And when I look at that it is a one page document which was filed in the Lake County Court and that doesn't really have very much and so I'm wondering is there any other document that your client Fisher signed whether under oath or not? Other than the one the big long police report which we all have and two this one page document filed in Lake County Court. Is there any other document of your client Fisher? I don't believe so. There is a warrant but I don't believe his signature is not on there. It would be the magistrate's signature that is on there. Okay. So just following up on that because I'm not sure I understood your answer. Where do we look in the record to support that this long I think there may be several documents that are actually called the complaint but that this long report was given to the magistrate. I believe that is in his deposition but I can't provide a pinpoint site for it. And then one other thing I'm curious about your statement that you said the prior panel did not decide qualified immunity because it seems to me that that's the only issue that's before a court on interlocutory appeal. It wasn't an interlocutory appeal. Oh it had been dismissed. Okay. And so it was only the question of enough to show a violation of a constitutional right. Correct. Okay. Thank you.  Thank you Your Honors. I believe I can answer a couple questions that were raised to opposing counsel. Per his deposition the only thing that Officer Fisher testified that he provided to the magistrate was Exhibit B which is Exhibit 1 of the complaint that you referenced and that solilocally is page 63 through 65 of Officer Fisher's deposition. So you dispute that he gave that report to the magistrate? Correct Your Honor. What Officer Fisher testified to is that he brought it with him and I asked him specifically was it question and answer? How did it go? And he says it's very informal. The magistrate asked me tell me what happened. I told him my version and then the only question is what are we going to do with the warrant? Never did he say that I gave the magistrate a copy of that police report. Was he asked what he told him as opposed to I told him what happened or what did you tell him happened? I can actually get to that right here Your Honor. Okay, specifically regarding Mr. Ramsey What page are you on? I'm on page 65 of the deposition Your Honor. Specifically regarding my interaction with Mr. Ramsey there was a verbal argument he was making demands he did not want to cooperate. I'm sorry Your Honor, I'm trying to read and it's... This is what he says he told the magistrate. Correct Your Honor. There was a verbal argument he was making demands he did not want to cooperate. Period. And then he said he, referring to the magistrate, looks over the complaint summons and warrant, looks at the prosecutor's ruling, asks if there's any recommendation on bond, that kind of stuff. And the complaint there is this one page document? That is correct Your Honor. And what's false in there? In the complaint Your Honor? The, again, repeatedly told to ask to leave, repeatedly told to do so. But that's not in there. It's not in the complaint. The exhibit, the complaint and summons... That's what I'm looking at. Okay, the complaint and summons, you're right I think, I don't know for sure. Oh, okay, yep. The complaint and summons says to wit, argumentative, disruptive, and continually interrupted officers while attempting to refrain from these actions and repeatedly asked to leave before actually doing so. And that is the one page complaint that Fisher signed and that was in fact presented to the magistrate, right? That is correct Your Honor. Okay. If there's no probable cause for the officer to have made the arrest as to disorderly conduct, but there was probable cause to arrest him for some other offense, what does that do to your argument, if any? If there actually is probable cause, then... For another offense? For another offense. Other than the case that was already brought up by Judge White. The infield, in the field issue versus the warrant issue, I think, still preserves it. More to the point, Your Honor, I would argue that there was no probable cause for any other charge. Again, speech-based conduct, he was advocating for his son. And as far as the delay, I believe it's been incredibly overblown. First and foremost, the record is clear. Mr. Holosis, when asked for his license, said, you called me here, why do you need my license? And then they said, well, we need it for the paperwork. He provided his license. He filled out the paperwork. He wanted to ask questions about why and the specifics of what his son was being charged with. He had, and under the statute, he has to have a right to take the action he takes, a legal and reasonable right. He is called there because his son is a minor and he has to take physical control of his child. That is the right and the obligation which he is undertaking. And the officers have a right and an obligation to make sure that the person to whom they're releasing the child is really the parent, correct? I'm not disputing that, Your Honor. But it's been acted like my client jumped up and down and said, I'm not giving you my license. He was asked for his license and he said, why do you need my license? You called me and they said, we need it, and he provided it. The time that Mr. Holosis was actually on scene, this was not a blown-out, long-drag-out, half-an-hour, 45-minute argument. The officers were only on scene from first parent to last parent approximately 40 minutes. Mr. Holosis was there 12, 15 minutes. The average parent was there about 10 minutes. Mr. Holosis was not even the reason that they were there until 2 o'clock in the morning. He had already left before the last parent had arrived. Officer Fisher was able to discharge more children to their parents than Officer Volk was, despite having the engagement with Mr. Holosis. This was not a lot of time. I believe there were a total of 5 children and 2 adults who were not of drinking age that had to be discharged to their parents. One more question. So in this complaint, if we omit the language and repeatedly ask to leave before actually doing so, I would think that being argumentative, disruptive, and continually interrupted officers while attempting to conduct official business would be enough, assuming it were the other offense. I realize that you've got two problems. One is leaving out parts of the statute. The other is this factual or this unfactual assertion. But it would seem to me that the latter problem probably isn't a problem because there was enough else in there. I don't know if you want to respond to that. I don't know that it means anything. I would, Your Honor. Being argumentative, was he debating with the officer and advocating for his son's innocence? Yes, he was. Being disruptive, I don't think that the police report shows that he was disruptive. I don't believe the police report shows that anything couldn't get done. Continually interrupted officers, again, I don't believe that's validated by the police report. He talked to Officer Volk. He was told to talk to Officer Fisher. Officer Fisher turned around and engaged him. And again, from the mindset and as far as the culpability here, this is the officer that testified at his deposition very early on that if I'm talking to someone and someone else asks me a question, it could be criminal. This case is at its essence, Your Honor, about the right to question police authority. There is a limitation on it, and I acknowledge that. But when you're talking about nothing more than truthful speech and the ability on behalf of your child to ask about the rightness or wrongness of a police officer's actions without threats of repercussion, I believe this is a very important case. And interestingly enough, the one thing in Officer Fisher's report that just, I think, screams out for what this is about, leave now or you will be arrested. And he complied. When he was told that here's your choices. You can continue doing what you're doing. I'll arrest you or you can leave. My client complied. And he left. Well, the statement should have been leave now and I'm still going to charge you. And that's actually what happened. It was a month went by. This complaint, the facts of that police report cannot support the allegations in this complaint. Are you suggesting that if somebody were told leave now and the person left at that time, the first time the person is told to leave, that they could not be charged with disorderly conduct? Given this fact pattern? I'm asking an abstract question. I can't actually agree with that statement, Your Honor, because I don't know what happened before that. So somebody could be very disruptive, using that as a general term to describe what the statute prohibits, and the police could say leave now. And the person could leave then, but because of the actions that the person had already taken, conceivably somebody could be arrested for the disorderly conduct that happened before he willingly left upon the police first command. Conceivably. But you're just saying that wasn't this case. Not in this case. What is your best case? If you had to point us to one or two cases that you would think would show us the path, what would be the best case? A couple of them, Your Honor, that came up and I didn't have a chance to get to them before. Sandal v. Larian, 119 Federal 3rd, 250. An officer cannot base a probable cause of termination on state v. Cooper, which is an Ohio appellate case, 51 Ohio Appeals 3rd, 790. Talks about the heightened requirement for uncooperative behavior, especially when we're talking about speech-based truthful content. What's the cite on that? 51 Ohio Appeals 3rd, 790. It is cited in my brief as well, Your Honor. I think Leonard v. Robinson is another one, 477 Fed 3rd, 347, where this court has actually held that a statute, forget a prosecutor telling you it's okay to charge on this, a statute making speech-based content alone illegal was insufficient for an officer to receive qualified immunity because of the requirement that an officer know that the First Amendment is an inherent right that, absent the fighting words and some other restrictions, which are clearly established, cannot be made illegal. It's not an affirmative defense, as Appellee argued in their brief. It's a right. With a few exceptions, an incontroverted one. And the last one, which we cited is in the City of Dayton, 440 Fed 3rd, 306. In ruling that consulting with a prosecutor provided cover on a qualified immunity and was proof of reasonableness by and of itself, the District Court not only did not cite Silberstein, did not distinguish Silberstein, ignored its existence, as I would argue, ignored the holding of this court in 113699, and chose to go outside of the jurisdiction. In the District Court's opinion, they cited a series of cases, not one of them from within the Sixth Circuit, not one of them from within any District Court within the Sixth Circuit. But it seems to me, if you're arguing about the First Amendment, that would be a defense to the criminal prosecution. But the officer wouldn't have any liability for that as long as he was truthful. I mean, you still get back to the need to find that he told an untruth. I don't disagree with that, Your Honor, to an extent. I do believe that the intentional, and you can't say it was anything other than intentional, to excise that large of a section of the statute, and to intentionally, there was also not a single fact provided that even had he not excised the language that could have supported that position. And then there's the issues of the continually interrupted, not supported by the police report. He came to Officer Fisher, and Officer Fisher broke off and went to do what he went to him. And he repeatedly told to leave, and we've already been over that ground ad nauseum. Thank you very much. One other question. Do you have a position on whether the prosecutor went with him to the magistrate? Whether the prosecutor actually was there, Your Honor? Right. I don't believe he was from the testimony, and again, when I question him about that, there's no indication that anyone was there but him. Now, he did have the prosecutor's recommendation, but he did not have the prosecutor with him. And there is an affidavit, which I was looking at, from the prosecutor, which is a little bit vague on that. Do you know what I'm referring to? Correct, where he said that Officer Fisher testified truthfully, Your Honor. That actually was briefed rather heavily in the last time around, where I broke down that, Ohio, you can either testify for a warrant on a misdemeanor like this. It can be something as simple as the presentation of the signed affidavit, and that, to his knowledge, it testified truthfully. The other issue, Your Honor, is whether he testified truthfully or not is completely outside of the realms of Mr. Germano's knowledge and ability to make a comment on, because he wasn't there that night. And he wasn't deposed, right? The prosecutor? That is correct, Your Honor. Thank you both for your argument. The case will be submitted. Would the clerk call the remaining cases? Thank you, Your Honor.